UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEMETRIES DAVIS,

            Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

            Defendant.
_____/

No. 14-13389

District Judge John Corbett O'Meara
Magistrate Judge R. Steven Whalen

**REPORT AND RECOMMENDATION**

Plaintiff Demetries Davis ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner ("Defendant") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

**I.   PROCEDURAL HISTORY**

Plaintiff applied for DIB on October 5, 2011 alleging disability as of November 10, 2011 (Tr. 158-164)  Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on December 20, 2012 in Flint, Michigan before Administrative Law Judge

("ALJ") Andrew G. Sloss (Tr. 64). Plaintiff, represented by attorney Cassandra Frum, testified (Tr. 67-83), as did vocational expert ("VE") Ms. Warner (Tr. 84-87). On January 23, 2013, ALJ Sloss found Plaintiff not disabled (Tr. 59-60).

On July 10, 2014, the Appeals Council declined to review the administrative decision (Tr. 1-7). Plaintiff filed suit in this Court on September 2, 2014. *Docket #1*.

## II. BACKGROUND FACTS

Plaintiff, born December 16, 1974, was 38 at the time of the administrative decision (Tr. 60, 158). He left school after seventh grade and worked as a "team leader" cutting grass and painting (Tr. 187). He alleges disability as a result of diabetes, sleep apnea, Attention Deficit Hyperactivity Disorder ("ADHD"), dyslexia, dizziness, blurred vision, and hand and foot numbness (Tr. 185).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

He left school after eighth grade (Tr. 67). He had not worked since November, 2010 (Tr. 67).

*Plaintiff's attorney interjected that her client* "did some self-employment work in 2011" (Tr. 68). The ALJ then granted her request to amend the onset date to September 1, 2011 (Tr. 68).

Plaintiff continued his testimony:

Prior to becoming disabled, he transported trailers and supervised other employees

-2-

(Tr. 68). The transportation job ended when he was laid off (Tr. 69). Earlier, he held a job as a laborer, requiring him to lift up to 15 pounds and stay on his feet "all day" (Tr. 69). He did not collect Workers' Compensation or unemployment benefits (Tr. 70).

He was not able to work due to blurred vision, shortness of breath, back pain, and hand and foot numbness (Tr. 70-71). He took insulin shots twice a day and took medication for diabetic neuropathy (Tr. 71). He obtained short-term relief from epidural injections (Tr. 72). He took Vicodin four times a day for back pain (Tr. 72). He was able to prepare simple meals but relied on his nephews to perform yard work (Tr. 72). He attended church each week (Tr. 72). On rare occasions, he shopped for groceries with the help of a motorized cart (Tr. 72). He divided his waking hours between watching television, sitting on the couch, and lying down (Tr. 73).

His self-employment work since November, 2010 consisted of barbequing and serving meals from a street corner concession stand (Tr. 73). He stopped working because the smoke from the barbeque caused breathing problems (Tr. 74). He used a CPAP device at night to treat sleep apnea (Tr. 74).

In response to questioning by his attorney, Plaintiff testified that he was placed in special education while in school and did not know how to read or write (Tr. 74). He reported that his blood sugar levels averaged above 300 (Tr. 75). He alleged tingling, numbness, and swelling of the feet (Tr. 75). He was unable to walk for more than half a block due to foot, back, and hip pain (Tr. 76). He did not use a cane (Tr. 77). He experienced shortness of breath after climbing a flight of stairs and difficulty bending (Tr.

77). His wife performed most of the household chores (Tr. 78). He was unable to stand for more than 20 minutes or sit for more than 40 (Tr. 78). He was unable to crawl for more than short distances on a rare basis (Tr. 79). He denied problems with fine manipulations (Tr. 80). He reported constant fatigue and intermittently blurred vision (Tr. 80). He denied significant memory problems but stated that he did not get along well with others because he was perceived as "mean" (Tr. 81). He took approximately three naps a day for up to two-and-a-half hours at a time (Tr. 82). He experienced around five "bad" days each week, characterized by the need to "lay around" all day (Tr. 82). His physical problems prohibited him from playing sports with his sons and affected his relationship with his wife (Tr. 83).

### 1. Treating Sources[1]

November, 2009 imaging studies of the lungs were unremarkable (Tr. 278). Treating records by Ahmad Abdel-Halim, M.D. state that the condition of diabetes was exacerbated by obesity (Tr. 275). A renal ultrasound was normal (Tr. 274). In October, 2010, Plaintiff sought treatment for right foot numbness (Tr. 271). Nerve conduction studies of the lower extremities revealed mild polyneuropathy (Tr. 267). November, 2010 treating notes state that Plaintiff continued to experience left hip pain due to an old gunshot wound (Tr. 266). The same month, he was diagnosed with "mild obstructive sleep apnea" (Tr. 262). January, 2011 treating records state that Plaintiff's left hip hurt him "once in a while" and that he had joined

---

[1]Medical records significantly predating the alleged onset of disability, while reviewed in full, are omitted from the present discussion.

a gym and was controlling his diet (Tr. 259). In November, 2011, Plaintiff stated that he did not have "any complaints" (Tr. 320).

In January, 2012, Dr. Abdel-Halim noted Plaintiff's report of left flank and hip pain (Tr. 318). He observed that Plaintiff was not in acute distress (Tr. 318). In April, 2012, Angel J. Rigueras, D.O. administered steroid hip injections (Tr. 338-339). The same month, Plaintiff reported to Dr. Ahmad-Halim that he felt "okay" and had "[n]o major complaints" (Tr. 315). In May, 2012, Plaintiff reported a reduction in pain (Tr. 391). The same month, he was diagnosed with "mild non-obstructive coronary artery disease" (Tr. 357, 372). Plaintiff was counseled to abstain from alcohol use (Tr. 365). In July, 2012, Plaintiff reported "constant" left hip pain with only "intermittent" pain the following month and "constant" pain in September, 2012 (Tr. 340-341, 349). In September, 2012, Dr. Abdel-Halim noted that Plaintiff was not compliant with dietary restrictions (Tr. 311). He noted a history of "chronic" back pain (Tr. 311). The following month, Dr. Rigueras found that Plaintiff experienced restrictions in lifting, bending, twisting, sitting, standing, walking, and stair climbing until December 31, 2012 (Tr. 350). November, 2012 records state that Plaintiff did not appear in acute distress (Tr. 354).

### 2. Non-Treating Sources

In January, 2012, Samiullah H. Sayyid, M.D. performed a consultative examination on behalf of the SSA, noting Plaintiff's report of chronic low back pain, sleep apnea, and hand and foot numbness (Tr. 299). Plaintiff admitted to occasional marijuana use (Tr. 299).

Dr. Sayyid noted a reduced range of lumbar spine motion (Tr. 300, 304). Plaintiff reported that he was currently receiving unemployment benefits (Tr. 301). Dr. Sayyid found that Plaintiff could not "heel and toe" walk but had a stable gait (Tr. 303).

In February, 2012, LaVerne Barnes, D.O. reviewed the treating and consultative records on behalf of the SSA, finding that Plaintiff could lift 50 pounds occasionally and 25 frequently; sit for six hours in and eight-hour workday and stand or walk for four; and push and pull without limitation (Tr. 95). Dr. Barnes found that Plaintiff could climb, stoop, kneel, crouch, or crawl on an occasional basis and balance frequently (Tr. 95-96). She found that Plaintiff should avoid concentrated exposure to temperature extremes, vibration, and hazards (Tr. 96).

### 3. Material Submitted Subsequent to the January 23, 2013 Decision[2] (Tr. 381-416)

In March, 2012, Dr. Rigueras examined Plaintiff, noting complaints of chronic hip pain and hand and foot numbness[3] (Tr. 382). Dr. Rigueras noted a history of cocaine and

---

[2] Dr. Rigueras' records created between April and October, 2012, included among the newer records, were part of the record reviewed by the ALJ (Tr. 336-351). Dr. Rigueras' records from March, 2012 and November, 2012 to January, 2013 are the only records not reviewed by the ALJ.

[3]

Pursuant to the sixth sentence of 42 U.S.C. § 405(g), material submitted subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir.1993). To establish grounds for a Sentence Six remand, the claimant must show that the "new evidence is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." § 405(g).

Plaintiff has not requested a Sentence Six remand and I find that the evidence added to the record after the administrative opinion does not justify a remand. First, as noted in the previous footnote, a number of the records duplicate those considered by the ALJ. Others, while not copies of the already submitted records, do not shed any new light on Plaintiff's

marijuana use (Tr. 383). Plaintiff denied exercising (Tr. 383). An examination of the spine was essentially unremarkable (Tr. 383-384). Plaintiff exhibited a reduced range of left hip motion (Tr. 385). Plaintiff reported taking pain medication as needed (Tr. 384). Dr. Rigueras recommended a steroid hip injection (Tr. 386). In December, 2012 Plaintiff underwent steroid injections to the lumbar spine (Tr. 408). Dr. Rigueras found that Plaintiff experienced restrictions in lifting, bending, twisting, sitting, standing, and climbing stairs until March, 2013 (Tr. 401, 412).

### C. Vocational Testimony

VE Warner classified Plaintiff's former work as a driver as semiskilled at the medium exertional level (exertionally light as performed) and work as a rough painter, unskilled/exertionally medium[4] (Tr. 84). The ALJ then asked the VE to assume a

---

conditions. Dr. Rigueras' March and December, 2012 records (Tr. 401, 412) do not differ much from his April to October, 2012 records. To satisfy the "materiality" requirement for a Sentence Six remand, a claimant "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence" *Sizemore v. Secretary of Health & Human Services*, 865 F.2d 709, 711 (6th Cir.1988). Plaintiff has not done so here.

[4]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

hypothetical individual of Plaintiff's age, education, and work experience with the following limitations:

> [A]ble to perform light work . . . . However, he can only stand and walk for up to four hours out of an eight-hour work day. He can occasionally climb, stoop, crouch, kneel, or crawl and can frequently balance. He must avoid concentrated exposure to extreme heat, cold, vibration, and hazards. Could such a person perform any of his past work? (Tr. 85).

The VE responded that the hypothetical limitations would preclude Plaintiff's past work but would allow for the light, unskilled work of inspector and hand-packager (5,800 in the regional economy); sorter (17,000); and cleaner/polisher (3,800). She testified that if the individual were required to lie down "three to four times a day for two to two-and-a-half hours at a time," all work would be precluded (Tr. 86). She stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT")(Tr. 86).

In response to questioning by Plaintiff's attorney, the VE testified that if the hypothetical limitations included a "sit/stand at will option," the inspector/hand-packer and sorter job numbers would not be affected but that the cleaner/polisher numbers would be reduced by 50 percent (Tr. 86). She stated that none of jobs required literacy (Tr. 87).

### D. The ALJ's Decision

Citing the medical records, ALJ Sloss found that Plaintiff experienced the severe impairments of "peripheral neuropathy; bilateral carpal tunnel syndrome; arthritis; diabetes; obesity; and obstructive sleep apnea" but that none of the conditions met or medically equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 54-55).

The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following additional limitations:

> [H]e can occasionally climb, stoop, crouch, kneel or crawl, and can frequently balance. He must avoid concentrated exposure to extreme heat, cold, vibration, and hazards (Tr. 55).

Citing the VE's testimony, the ALJ determined that while Plaintiff was unable to perform his past work, he could work as an inspector/hand packager, sorter, or cleaner/polisher (Tr. 60).

The ALJ discounted Plaintiff's alleged degree of limitation, citing Dr. Barnes' February, 2012 findings (Tr. 56). However, the ALJ noted that the more recent medical evidence and Plaintiff's testimony supported an RFC for exertionally light, rather than medium work as found by Dr. Barnes (Tr. 56). The ALJ found that portions of Plaintiff's testimony were not supported by the treating and examining records, observing that the claim of "severe grip strength problems" was contradicted by the consultative findings (Tr. 58). The ALJ found that Plaintiff appeared to be "exaggerating his symptomology," citing medical records showing only mild limitations (Tr. 58-59). The ALJ noted that during times Plaintiff was compliant with his prescribed plan of treatment, he reported "no complaints" (Tr. 59).

### III.    STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more

than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment

listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

Plaintiff argues, in effect, that the RFC found in the administrative opinion is not well supported or articulated. *Plaintiff's Brief,* 10-14, *Docket #14.* He contends that the ALJ did include a narrative discussion of the limitations contained in the RFC as required by SSR 96-8p. *Id.* at 14. On a related note, he argues that the ALJ improperly discounted the allegations of physical limitation. *Id.* at 12-13.

"RFC is what an individual can still do despite his or her limitations." SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts" including objective findings, non-medical evidence, and activities of daily living. *Id.* at 7. The analysis of the physical functions must include the exertional activities of "sitting, standing, walking, lifting, carrying, pushing, [and] pulling" as well as "manipulative or postural functions, such as reaching, handling, stooping or crouching." 20 C.F.R. § 404.1545. "'Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing.'" *Delgado v. Commissioner of*

*Social Sec.*, 30 Fed.Appx. 542, 547-548, 2002 WL 343402, *5 (6th Cir. March 4, 2002)(*citing Bencivengo v. CSS,* 251 F.3d 153, slip op. at 4 (Table)(3rd Cir. December 19, 2000). "'[T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Id.* (*citing Bencivengo* at slip op. 5).

Contrary to Plaintiff's argument, the ALJ provided an adequate explanation for the limitations found in the RFC. As discussed by the ALJ, the non-exertional limitations (occasional climbing, stooping, kneeling, crouching, and crawling on an occasional basis and avoidance of concentrated exposure to temperature extremes, vibration, and hazards) (Tr. 55) are drawn directly from Dr. Barnes' February, 2012 assessment and consultative records showing a normal gait and full grip strength (Tr. 55-56, 95-96, 303). As to the exertional limitations, the ALJ noted that Dr. Barnes' conclusion that Plaintiff could perform exertionally medium work was made without benefit of evidence created after February, 2012 showing that Plaintiff received care for a cardiac condition and received steroid injections due to back and hip pain (56-58). The ALJ reasonably determined that the newer evidence supported an RFC for light, rather than medium work (Tr. 55-58). Because the limitations are supported by the record and well explained, a remand on this basis is not warranted.

Plaintiff makes a number of other scattershot criticisms of the ALJ's findings. He asserts that the opinion had "absolutely no rationale [or] discussion" of his medical problems

and that the ALJ failed to discuss "any non-exertional limitations in any meaningful way." *Plaintiff's Brief* at 11. However, the administrative opinion contains a thorough and accurate two-page summation of the treating, consultative, and non-treating evidence of breathing problems, postural limitations, and "mild motor and sensory neuropathy" (Tr. 57-58). Plaintiff's one-sentence argument that the ALJ did not consider limitations stemming from Carpal Tunnel Syndrome is also without merit. While the ALJ acknowledged the diagnosis of Carpal Tunnel Syndrome at Step Two of the analysis, he noted that Plaintiff exhibited "normal grip strength and intact fine dexterity" during a consultative examination (Tr. 58, 302-303).

Plaintiff's claim that the ALJ ignored the cardiovascular studies and failed to provide a rationale for rejecting the claims of heart problems is also without merit. The ALJ discussed the cardiovascular studies showing a reduced ejection fraction and mild coronary artery disease and cardiomyopathy (Tr. 58). The ALJ's conclusion that the mild heart conditions would not preclude the limited range of light work is supported by the evidence (Tr. 55-59). Plaintiff's claim that the ALJ ignored the condition of "renal failure" is undermined by the lack of any evidence supporting renal failure or that kidney problems caused work-related limitations (Tr. 274). Plaintiff's claim that the RFC did not contain any "non-exertional limitations whatsoever," *Plaintiff's Brief* at 11, is flatly contradicted by the inclusion of both postural and environmental limitations in the RFC (Tr. 55). Plaintiff cites *Rogers v. CSS,* 486 F. 3d 234 (6th Cir. 2007), to support his argument that the ALJ erred by failing to articulate the "weight to be given" to the various medical records. *Plaintiff's Brief*

at 13. However, the "weight" discussion in *Rogers* pertains to the weight to be accorded a treating physician's opinion of disability or limitation. *Id.* at 242. Because none of the treating sources stated that Plaintiff experienced greater limitations than those found in the RFC (much less that he was disabled) *Rogers* is inapplicable.

Plaintiff attack on ALJ's credibility determination is similarly meritless. *Plaintiff's Brief* at 12-14. The assertion that the ALJ failed to acknowledge the allegations of hand and leg numbness; the need to lie down multiple times a day; and the need for repeated steroid injections is puzzling, given that these claims of limitation were all acknowledged in the administrative opinion (Tr.55- 56). Further, the ALJ's rejection of a number of Plaintiff's allegations is well explained. The ALJ reasoned that Plaintiff's physical problems were not as severe as alleged based on the treating and consultative records showing no "complaints," and only intermittent and mild hip pain (Tr. 58-59, 259, 315, 303, 320, 318). The ALJ noted that Plaintiff received only conservative treatment and that none of the treating sources had recommended surgery (Tr. 58). He noted that the claims of hand problems were undermined by the findings of full grip strength and fine dexterity (Tr. 58).

The ALJ's determination that Plaintiff's testimony was not entirely credible is supported by other portions of the record. Nerve conduction studies showed only "mild" polyneuropathy (Tr. 267). Plaintiff experienced good (if not long-lasting) results from steroid injections (Tr. 391). His cardiac conditions were diagnosed as "mild" (Tr. 357, 372). Plaintiff did not appear to be in acute distress (Tr. 354). As such, the deference generally accorded an ALJ's credibility determination is appropriate here. "[A]n ALJ's credibility determinations

about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.'" *Cruse v. Commissioner of Social Sec.,* 502 F.3d 532, 542 (6th Cir.2007) (*citing Walters v. Commissioner of Social Sec.,* 127 F.3d 525, 531 (6th Cir.1997)); *See also Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir.1993); *Anderson v. Bowen,* 868 F.2d 921, 927 (7th Cir.1989) (*citing Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record' ").

In closing, it should be noted that the decision to uphold the ALJ's findings should not be read to trivialize Plaintiff's limitations as a result of diabetes and back and hip problems. Nonetheless, the determination that the Plaintiff was not disabled as of January 23, 2013 is generously within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th

Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

/s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: August 4, 2015

## Certificate of Service

I certify that a copy of this document was served upon parties of record on August 4, 2015 via electronic or postal mail.

/s/A. Chubb
CASE MANAGER